IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIAN P. GUTIERREZ, III,<br>#2063017,<br>Plaintiff, | )<br>)<br>) | |
| | ) | |
| vs. | ) | No. 3:23-CV-0244-L-BH |
| | ) | |
| DALLAS COUNTY MUNICIPALITIES<br>AND ENTITIES, ET AL.,<br>Defendants. | )<br>)<br>) | Referred to U.S. Magistrate Judge[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings and applicable law, the plaintiff's official capacity claims against the judge and prosecutors should be **DISMISSED without prejudice** based on Eleventh Amendment immunity, and his remaining claims should be **DISMISSED with prejudice** for failure to state a claim or as barred by *Heck v. Humphrey*.

## I. BACKGROUND

Julian P. Gutierrez, III (Plaintiff), a Texas state prisoner, sues former Dallas County Criminal District Court Judge Jeanine Howard (Judge), several Dallas County prosecutors[2] (Prosecutors), his defense attorney (Defense Attorney), three members of the Dallas Police Department (Officers), the victim of the state crime for which he was convicted (Victim), the City of Dallas (City), and the County of Dallas (County) (Defendants).[3] (*See generally* docs. 3; 10.)

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for full case management.

[2] The prosecuting attorneys named in the pleadings are Craig Watkins, Russell J. Anderson, Jr., and Daniel Abrahamson. (doc. 10 at 1.) Plaintiff appears to sue Prosecutors in their official capacities as representatives of the County of Dallas and in their individual capacities. (doc. 10 at 1–2, 6, 8.)

[3] Plaintiff also originally named Dallas County Criminal District Court No. 6 as a defendant in this case. (doc. 3 at 3.) He later substituted Prosecutors and Judge as defendants. (*See* doc. 10 at 6.)

On November 11, 2014, Plaintiff was arrested and charged with aggravated robbery with a deadly weapon. (doc. 3 at 4.)[4] On that date, one of the Officers observed a man riding down a public road on the hood of a pickup truck. (doc. 10 at 21.) She pursued the pickup truck until it collided with a telephone pole in a parking lot adjacent to an apartment complex. (*Id.*) An unidentified individual flagged the officer down and informed her that two individuals had run behind the apartment building. (*Id.*) The officer ran in that direction and saw Plaintiff and Victim engaged in a physical fight. (*Id.*) The officer held Plaintiff and Victim at gunpoint until additional officers[5] arrived and arrested both of them. (*Id.*) Victim informed the officers that his pickup truck had been stolen while he was airing up the tires at a nearby gas station. (*Id.*) According to him, when Plaintiff began to drive away in Victim's truck, Victim jumped on the hood of the truck in an attempt to stop the theft, and Plaintiff swerved in an attempt to force Victim off of the hood and crashed into a telephone pole. (*Id.* at 21-22.) Plaintiff attempted to flee on foot and Victim chased after him and physically restrained him, which is what started the altercation between them. (*Id.*) Based on this statement from Victim, the officers arrested Plaintiff. (*Id.*) According to Dallas County public records, Plaintiff was indicted on December 4, 2014. The indictment also alleged that Plaintiff had previously been convicted of two felony offenses; as a result, he was designated a habitual offender who could be sentenced to life in prison. (*See* doc. 10 at 10.) Dallas County public records show that on April 20, 2016, Plaintiff was convicted by a jury and sentenced to twenty years in prison, and he is currently serving that sentence. (*See* doc. 3 at 1.)

Plaintiff alleges that he is innocent and that the criminal case against him is based solely on

---

[4] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[5] These additional officers are not defendants in this suit.

a case of mistaken identity. (doc. 3 at 8.) He claims that he was simply visiting someone who lived at the apartment complex on the day of the car-jacking and happened to be wearing similar clothes to the actual thief. (*Id.* at 4, 8.) He alleges that Victim mistakenly thought that Plaintiff was the thief, and that the officers took Victim's word for it without conducting a proper investigation. (*Id.* at 8.) He notes that Victim did not successfully identify him as the thief in open court and instead identified a third party sitting in the courtroom during the trial. (doc. 10 at 16.) Plaintiff alleges that his flawed state criminal trial ultimately resulted in an invalid and unconstitutional conviction and sentence, and that Defendants circumvented several of his rights under the United States and Texas Constitutions and violated various state laws. (*See generally* docs. 3; 10.)

Plaintiff seeks damages, an acquittal or pardon, a public apology broadcast on television news stations, and for several of the Defendants to be disbarred or removed from their official positions. (*See generally* doc. 10.) He also asks for "establish[ed] provisions of code of conduct and ethics procedures to be enforced" and requests "penal punishment" in the "court['s] discretion." (*See, e.g.*, doc. 10 at 2, 8.)

## II. PRELIMINARY SCREENING

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis*. (doc. 5.) As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. HABEAS RELIEF

Plaintiff challenges his conviction and seeks acquittal under 42 U.S.C. § 1983. (*See* doc. 3 at 18.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Habeas relief is an inappropriate remedy in a § 1983 action. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). A plaintiff cannot challenge the fact or duration of confinement in a § 1983 action. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)). He may only do so within the exclusive scope of habeas corpus. *See Preiser*, 411 U.S. at 487. Plaintiff's claims for habeas relief should be dismissed.

### IV. REMOVAL OF STATE OFFICIALS

Plaintiff asks this court to remove one of the Prosecutors, Judge, and all three Officers from their positions. (doc. 10 at 8, 15, 18, 24, 25.) However, "federal courts have no authority to … fire state employees[.]" *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), *rev'd on other grounds*

*by Alabama v. Pugh*, 438 U.S. 781 (1978). This relief cannot be granted, and Plaintiff's claims for this relief should be dismissed.

## V. MUNICIPAL LIABILITY

Plaintiff appears to sue both City and County under § 1983. (doc. 10 at 3, 5.)

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City of Hurst*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997)). It is well-settled that a municipality cannot be liable under a theory of respondeat superior, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 … requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Cox v. City of Dall.*, 430 F.3d 734, 748 (5th Cir. 2005); *Jones*, 2006 WL 522127, at *3 (citing *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996)).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body

5

> of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579–80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d at 578–79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. 130 F.3d at 167. It also found that an assertion that several policies "'led to' unspecified 'unconstitutional arrests and confinements,'" and that a department policy of "engag[ing] in conduct

toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id.*

In addition, a single incident is insufficient to infer an official policy or custom. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dall. Cnty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail.").

Here, in response to a magistrate judge's questionnaire,[6] Plaintiff expressly declined to plead a policymaker or a policy that was widespread or officially adopted. (doc. 10 at 3, 5.) He has failed to allege facts supporting the required elements of a municipal liability claim, and any claims against City and County should be dismissed for failure to state a claim.

## VI. OFFICIAL CAPACITY CLAIMS

Plaintiff appears to sue Prosecutors and Judge in their official capacities under § 1983. (doc. 10 at 1–7.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The State of Texas is the real party in interest when the plaintiff seeks relief that would be provided by the state. *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir.), *cert. denied*, 474 U.S. 1037 (1985)) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101 & n. 11 (1984)). Any suit against Judge in her official

---

[6] Plaintiff's responses to a magistrate judge's questionnaire are considered an amendment to his pleadings. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

capacity or as an officer of the State of Texas is therefore a suit against the State. *See id.; see also Kentucky*, 473 U.S. at 165; *Freedom from Religion Foundation, Inc. v. Mack,* 4 F.4th 306, 311 (5th Cir. 2021). Additionally, the Fifth Circuit "has stated on numerous occasions that district attorneys and assistant district attorneys in Texas are agents of the state when acting in their prosecutorial capacities." *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009) (collecting cases). Plaintiff's suit against Prosecutors in their official capacities is therefore also a suit against the State. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 638–39 (N.D. Tex. 2007); *see also Elie v. Ashford*, No. 3:16-CV-2032-L-BH, 2016 WL 4276009, at *2 (N.D. Tex. July 14, 2016), *adopted by* 2016 WL 4268930 (N.D. Tex. Aug. 15, 2016).

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328–29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Although Congress has the power to abrogate that immunity through the Fourteenth

Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *AT & T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit here, nor has Congress abrogated the Eleventh Amendment immunity by enacting § 1983, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a)." *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

Plaintiff's official capacity claims against Prosecutors and Judge for monetary damages are barred by Eleventh Amendment immunity, and should be dismissed without prejudice.[7]

## VII. INDIVIDUAL CAPACITY CLAIMS

Plaintiff also sues Defendants in their individual capacities. (*See generally* docs. 3; 10.)

### A.    <u>Judge</u>

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges enjoy absolute immunity from § 1983 suits. *See Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). They are immune from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991). Judges are also generally immune from suits seeking injunctive relief. 42 U.S.C. § 1983 ("[I]n any action brought against a

---

[7]Claims barred by sovereign immunity can only be dismissed for lack of subject matter jurisdiction "and not with prejudice." *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996).

judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). Allegations of bad faith or malice do not overcome judicial immunity. *Mireles*, 502 U.S. at 11.

"'Texas courts employ the same judicial immunity analysis as the federal courts in this Circuit[.]'" *See Thomas v. State*, 294 F. Supp. 3d 576, 601 (N.D. Tex. 2018) (quoting *Durrance v. McFarling*, No. 4:08-CV-289, 2009 WL 1577995, at *3 (E.D. Tex. June 4, 2009) (in turn citing *Hawkins v. Walvoord*, 25 S.W.3d 882, 890 (Tex. App.—El Paso 2000, pet. denied))); *see also Sharp v. Palmisano*, No. 13-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Hawkins*, 25 S.W.3d at 890) (recognizing that Texas's judicial immunity principles mirror the federal judicial immunity doctrine).

Here, Plaintiff does not make any factual allegations supporting the conclusion that Judge acted outside of the scope of her official judicial duties. He complains only of the way in which she handled his state criminal proceedings. (*See* doc. 10 at 15.) His individual capacity claims against Judge should be dismissed for failure to state a claim based on judicial immunity. *See Nalls v. LaSalle*, 568 F. App'x 303, 304–05, 307 (5th Cir. 2014) (per curiam) (affirming the district court's dismissal of the plaintiff's § 1983 claims for failure to state a claim based on judicial immunity).

## B.    <u>Prosecutors</u>

Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). This immunity extends to municipal prosecutors. *Melton v. Frank*, 114 F.3d 1184 (5th Cir. 1997) (per curiam) (holding that municipal prosecutors are entitled to absolute prosecutorial immunity from § 1983 damage claims); *see also Smith v. Connick*, No. 13-52, 2014 WL 585616, at *1–4 (E.D. La. Feb. 14, 2014) (finding that municipal prosecutors are

immune from claims under 42 U.S.C. §§ 1983, 1985, and 1988). The Supreme Court has explained that "conduct in 'initiating a prosecution and in presenting the State's case,' … insofar as that conduct is 'intimately associated with the judicial phase of the criminal process'" is entitled to such immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler*, 424 U.S. at 430–31). Absolute immunity protects prosecutors from liability even when they act "maliciously, wantonly, or negligently." *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985). However, absolute immunity does not protect prosecutors from liability "when they act outside of their role in the judicial process, for instance, when they engage in administrative or investigative acts." *Bogard v. Lowe*, No. SA-21-CV-00021-FB, 2022 WL 1050332, at *6 (W.D. Tex. Apr. 6, 2022) (citing *Burns*, 500 U.S. at 493).

Here, Plaintiff's claims against Prosecutors are focused solely on their conduct while trying his criminal case. (*See, e.g.* doc. 10 at 8.) For instance, he alleges that one of the Prosecutors violated his constitutional rights by eliciting false testimony during trial. (*Id.*) The challenged conduct falls squarely within Prosecutors' official duties in "initiating a prosecution and in presenting the State's case." *See Imbler*, 424 U.S. at 430–31. Accordingly, Plaintiff's claims against Prosecutors in their individual capacities should be dismissed as barred by prosecutorial immunity.

## C.    Officers

Plaintiff sues Officers in their individual capacities under § 1983. (doc. 10 at 17, 24–25.) He alleges that Officers violated his rights under the Fourteenth and Eighth Amendments of the United State Constitution and his rights under the Texas Constitution. (*Id.*)

### 1. Eighth Amendment

Plaintiff alleges that Officers subjected him to cruel and unusual punishment in violation of

11

the Eighth Amendment. (*Id.*)

The Eighth Amendment protects convicted inmates from cruel and unusual punishment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Here, Plaintiff sues Officers, who were involved in his arrest and the investigation into his state crime. (doc. 10 at 17, 24–25.) He does not sue any correctional officers for any conduct arising after he was convicted. For this reason, his Eighth Amendment claims against Officers should be dismissed for failure to state a claim.

### 2. Fourteenth Amendment

Plaintiff alleges Officers racially profiled him in violation of the Fourteenth Amendment. (*Id.*) The Court broadly construes this claim as one for a violation of his right to equal protection. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To maintain an equal protection claim, a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001). Plaintiff does not allege that similarly-situated individuals received different treatment than he did, nor does he plead discriminatory intent, so his Fourteenth Amendment claims should be dismissed.

### D.    Defense Attorney and Victim

As noted, § 1983 provides redress for violations of a citizen's constitutional rights. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). In general, defense attorneys and other private individuals are not state actors for purposes of § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996); *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677,

679 (5th Cir. 1988). However, a plaintiff may assert a conspiracy claim under § 1983 such that these private individuals can be held liable. *See Golla v. City of Bossier City*, 687 F. Supp. 2d 645, 662 (W.D. La. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). To state a conspiracy claim under § 1983, a plaintiff must allege facts to support "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). A plaintiff must also show that the defendants agreed to commit actions that violated his or her constitutional rights. *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. 1993) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties).

Here, Plaintiff objects to Defense Attorney's choices regarding how to defend Plaintiff at trial. (doc. 10 at 14.) Plaintiff alleges that Defense Attorney failed to cross-examine Victim at trial, failed to point out certain deficiencies in the police investigation of the car-jacking, and failed to locate and introduce video surveillance footage from the gas station. (*Id.*) He does not allege at any point that Defense Attorney conspired with a state actor to violate his rights, however. Although Plaintiff does suggest that Officers changed Victim's statement when transcribing it in the November 7, 2014, incident report, he does not allege that Victim conspired with a state actor to violate Plaintiff's rights. He does not provide any factual basis for the conclusion that Victim and any state actor entered into an agreement of any kind. Accordingly, Plaintiff's § 1983 claims against

13

Defense Attorney and Victim should be dismissed for failure to state a claim.

## VIII. STATE LAW CLAIMS

Plaintiff asserts several other state law claims against Defendants. (*See generally* doc. 10.)[8]

### A. <u>Texas Penal Code</u>

Liberally construed, Plaintiff asserts a number of claims under the Texas Penal Code.[9] (*See,*

*e.g.*, doc. 10 at 8, 9, 15.)

"Texas does not recognize private causes of action for penal code violations." *Joyner v.*

*DeFriend*, 255 S.W.3d 281, 283 (Tex. App.—Waco 2008, no pet.) (citing *Trevino v. Ortega*, 969

S.W.2d 950, 953 (Tex. 1998)); *see also Kiggundu v. Mortgage Elec. Registration Sys., Inc.*, No.

4:11-1068, 2011 WL 2606359, at *6 n.79 (S.D. Tex. June 30, 2011), *aff'd by* 469 F. App'x 330 (5th

Cir. 2012) (holding claim under Texas Penal Code § 32.47 "fail[ed] as a matter of law because the

Texas Penal Code does not create a private right of action); *Mathis v. DCR Mortg. III Sub, I, LLC*,

952 F. Supp. 2d 828, 836 (W.D. Tex. 2013) (dismissing claim for forgery in violation of the Texas

---

[8] Under 28 U.S.C. § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Tex. Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute," however. *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a plaintiff's] right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). Here, all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. The Court therefore should exercise supplemental jurisdiction and consider the claims on the merits. *See Thomas*, 294 F. Supp. 3d at 613.

[9] Throughout the pleadings, Plaintiff requests "penal punishment" for Defendants. (*See, e.g.*, doc. 10 at 8, 9, 15.)

Penal Code because "the Texas Penal Code does not create a private cause of action"). Plaintiff's

claims under the Texas Penal Code should therefore be dismissed for failure to state a claim.

**B.    <u>Defamation</u>**

Plaintiff sues Defendants for defamation. (*See generally* doc. 10.)

"Defamation is a false statement about a person, published to a third party, without legal

excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150,

1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no

pet.)). "Defamatory statements are 'published' if they are communicated to a third party capable of

understanding their defamatory connotation and in such a way that the third party did so

understand." *Crouch v. J.C. Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*

337 F. App'x 399 (5th Cir. 2009). "A statement is defamatory if it exposes a person to 'public

hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity,

virtue, or reputation.'" *Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3

(N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex.

App.—Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001. Generally, a plaintiff

who is a private individual, such as Plaintiff, must show that the defendant acted negligently

regarding the truth of the defamatory statement at the time that he published it. *Nasti v. CIBA*

*Specialty Chems. Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA-TV, Inc. v. McLemore*,

978 S.W.2d 568, 571 (Tex. 1998)).

Texas law provides an absolute privilege to parties and witnesses who participate in judicial

proceedings from having to answer civil actions in damages for libel or slander.[10] *See Runge v.*

---

[10] Libel and slander are two different types of defamation. *See Reagan v. Guardian Life Ins. Co.*, 166
S.W.2d 909, 912 (Tex. 1942).

15

*Franklin*, 10 S.W. 721, 723 (Tex. 1889). The Texas Supreme Court describes the scope of the privilege to mean "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the bas[is] of a civil action in damages for slander or libel." *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). The absolute privilege extends to "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982).

Here, Plaintiff has failed to plead the elements of defamation. He has not alleged any facts to support the conclusion that Defendants were negligent in making a false statement capable of harming Plaintiff's reputation.[11] It is not even clear from the pleadings to what statements Plaintiff is objecting. Moreover, the bulk of the conduct challenged by Plaintiff occurred during his state criminal proceedings; to the extent he alleges that any statements made during those proceedings were defamatory, his claims must be dismissed because the statements are privileged and cannot constitute actionable defamation. *See Runge*, 10 S.W. at 723. Plaintiff's defamation claims against the defendants who are not immune should be dismissed for failure to state a claim.

## C.    **Malpractice**

Plaintiff also sues Defense Attorney for legal malpractice. (doc. 10 at 9.)

Under Texas law, to state a claim for legal malpractice, a plaintiff must establish that: "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's

---

[11] Additionally, to the extent Plaintiff challenges any statements made regarding the underlying offense as false, those defamation claims are foreclosed by *Heck*, because they would necessarily imply that his conviction is invalid. *See Espericueta v. Palacios*, No. 15-320, 2017 WL 7058214, at *5 (S.D. Tex. Dec. 5, 2017); *see also Price v. Cnty. Ct. Clerk of Hill Cnty.*, 73 F. App'x 80 (5th Cir. 2003) (per curiam).

breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017) (citing *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016)); *see also Janvey v. Proskauer Rose LLP*, No. 3:13-CV-0477-N, 2015 WL 11121540, at *6 (N.D. Tex. June 23, 2015) (citing *Duerr v. Brown*, 262 S.W.3d 63, 76 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). Attorneys are "held to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). "When a legal-malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Rogers*, 518 S.W.3d at 401.

Here, Plaintiff has failed to allege that Defense Attorney breached a duty of care he owed Plaintiff. He has not pleaded any facts showing that Defense Attorney failed to provide the kind of services that a reasonably prudent attorney would have provided. He also does not allege sufficient factual content to show that any missteps by Defense Attorney caused him damage. Plaintiff's legal malpractice claim against Defense Attorney should be dismissed for failure to state a claim.

## IX. *HECK* BAR

When a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, *Heck v. Humphrey* provides that the complaint must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. §

2254.[12] 512 U.S. 477, 486–87 (1994). *Heck* applies to claims seeking declaratory and injunctive relief as well as those seeking damages. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 805 (N.D. Tex. 2005) (first citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); and then citing *Clarke*, 154 F.3d at 190–91). "The Supreme Court's holding in *Heck* … applies to bar claims against defendants in both their individual and official capacities." *Darnell v. Sabo*, No. 4:19-CV-871-O, 2022 WL 16577866, at *5 (N.D. Tex. Nov. 1, 2022) (citing cases).

To the extent it applies in this case, *Heck* also precludes claims brought under the Texas Constitution. *See, e.g.*, *Richardson v. Avery*, No. 3:16-CV-2631-M-BH, 2018 WL 5269860, at *6 n.9 (N.D. Tex. Oct. 1, 2018); *see also Fields v. Nelms*, No. 3:15-CV-0879-P, 2015 WL 3407955, at *1 (N.D. Tex. May 27, 2015) (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)) (recognizing that *Heck* applies to "state law claims based on the same premise as constitutional claims").

Here, Plaintiff's remaining claims for wrongful imprisonment, false arrest, and assault would, if successful, necessarily imply that his underlying conviction is invalid. (*See generally* doc. 10.) It is well-established that the *Heck* bar applies to Plaintiff's claims for "wrongful imprisonment," *see Perry v. Holmes*, 152 F. App'x 404, 405 (5th Cir. 2005) (per curiam) (holding that plaintiff's false imprisonment claims were barred by *Heck* because they "directly implicate[d] the validity of his conviction and confinement"), and his claims for false arrest, *see Sappington v.*

---

[12] When a claim that would otherwise be barred by this rule is appropriate for early and final determination, a court is not required to consider whether the *Heck* bar applies to that claim. *See Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 462 n.6 (5th Cir. 1998) (when an action raises an issue of immunity, the court to the extent it is feasible to do so should determine that issue as early in the proceedings as possible); *Smithback v. 256th Jud. Dist. Ct.*, No. 3:01-CV-1658-M, 2002 WL 1268031, at *2 (N.D. Tex. June 3, 2002) (accepting recommendation that "[w]hen a plaintiff seeks relief unavailable under 42 U.S.C. § 1983 or sues individuals or entities who are not proper parties under § 1983, it also seems appropriate to have an early determination of those issues"). Those § 1983 claims that were appropriate for early and final determination in this case were addressed in the preceding discussions.

*Bartee*, 195 F.3d 234, 237 (5th Cir. 1999) (holding that *Heck* bars recovery for false arrest because "[a] conviction … necessarily implies that there was probable cause for [the plaintiff's] arrest at that point in time").

Plaintiff's assault claim against Victim is also *Heck*-barred. In Texas, a private individual, much like a police officer, may use reasonable force to carry out a citizen's arrest. *See State v. Wagner*, No. 05-96-00587-CR, 1997 WL 746123, at *6 (Tex. App.—Dallas 1997, no pet.) (noting that state provisions allowing for citizen's arrests "[have] been interpreted to allow the use of reasonable force to both effect an arrest and to detain a suspect"). Accordingly, it is a defense to an assault claim that an alleged assailant was attempting to detain an individual who committed a crime. *See Garza v. Traditional Kickapoo Tribe of Tex.*, 79 F. App'x 10, 11 (5th Cir. 2003) (per curiam). This is true even if that crime was a theft, and the thief has since abandoned his attempt to steal the property. *See Simpson v. State*, 815 S.W.2d 900, 901 (Tex. App.—Fort Worth 1991, no pet.); *Knight v. State*, No. 14-10-00408, 2011 WL 3760827, at *3 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *Ramos v. State*, No. 01-12-00957-CR, 2014 WL 50812, at *14 (Tex. App.—Hosuton [1st Dist.] 2014, no pet.). For this reason, a ruling in Plaintiff's favor would necessarily imply the invalidity of his underlying conviction, which provided Victim the authority to use reasonable force to detain Plaintiff, and *Heck* applies to this claim. *Cf. DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (holding that excessive force claim against arresting officers is barred by *Heck* when facts supporting that claim are inseparable from facts supporting state conviction); *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324 (5th Cir. 2004) (concluding that the plaintiff's suit for excessive force was *Heck*-barred because it "challenge[d] the factual determination that underlies his conviction"). Additionally, Plaintiff asserts several vague

19

claims under the Texas Constitution (*see, e.g.* doc. 10 at 15); those claims are also barred by the rule pronounced in *Heck*.

Because *Heck* applies to these claims, Plaintiff must demonstrate that his allegedly improper conviction has been reversed, invalidated, or expunged prior to bringing them under § 1983. In response to a questionnaire asking whether his convictions have been overturned, Plaintiff cites only to a Fifth Circuit decision denying his request to file a successive habeas petition. (doc. 10 at 32.) He therefore fails to sufficiently allege that his conviction has been set aside. Therefore, the claims to which *Heck* applies are "legally frivolous" within the meaning of 28 U.S.C. § 1915 and should be dismissed "with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

## X. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). A verified questionnaire allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F.

App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

Here, Plaintiff has responded to a questionnaire and has had ample opportunity to amend his complaint. He has therefore pleaded his best case, and further leave to amend is not warranted.

## XI. RECOMMENDATION

Plaintiff's official capacity claims against the judge and prosecutors should be **DISMISSED without prejudice** based on Eleventh Amendment immunity, and his remaining claims should be **DISMISSED with prejudice** for failure to state a claim or as barred by *Heck*.

**SO RECOMMENDED on this 28th day of November, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE